SECURITY SAVINGS BANK, Appellant, v. MARY KELLEMS.—9 S. W. (2d) 967.

Division One, October 3, 1928.

(1)

2

*Ray B. Lucas* for appellant.

*R. F. Baynes* for respondent.

GENTRY, J.—This case comes to this court on a division of opinions by the Springfield Court of Appeals; the majority opinion by Judge BAILEY affirming the judgment of the circuit court, while the dissenting opinion by Judge BRADLEY holds that the cause should be reversed and that the majority opinion is in conflict with the rule laid down by this court.

The suit is by attachment on two promissory notes signed by the defendant and her husband G. B. Kellems, both dated October 21, 1922; the action is in two counts. A plea in abatement was filed by the defendant, Mary Kellems; also an answer by her in which she admitted the execution of both notes, but charged fraud and duress in procuring her signature thereto; then a prayer that the two notes be cancelled and declared null and void as to her. After the filing of such answer, plaintiff filed a demurrer, and then filed a reply in the nature of a general denial. A trial before the court resulted in judgment for defendant Mary Kellems, and judgment for plaintiff on both notes against the defendant G. B. Kellems. From this judgment, plaintiff appealed.

One of the notes in question was executed by the defendant and her husband in favor of plaintiff bank for $455.74, and the other note was executed by them in favor of one W. H. Adams for $338.81 and assigned by Adams to plaintiff. Each note bore eight per cent interest, and had a provision for ten per cent attorney's fee in the event the note was not paid when due.

Plaintiff's evidence tended to show that plaintiff was a banking corporation located at Chaffee, Missouri, and that it held two notes that were signed by the defendant G. B. Kellems prior to the date that the two notes in question were executed. Plaintiff employed an attorney, one Lilles, to attend to the collection of the two notes signed by G. D. Kellems. Lilles went to Cairo, Illinois, and secured from defendant and her husband the two notes here sued on, and also a deed of trust to secure the same on certain vacant property owned by them and known as the "Weiner lots," located in Chaffee, Scott County, Missouri. Afterwards the deed of trust on the Weiner lots was foreclosed, and a credit was indorsed on the back of the first note of $45.74 and on the back of the second note of $41.

The defendant's evidence tended to show that the plaintiff's attorney had written letters to her at Cairo, where she and her husband were temporarily living, threatening to attach her home place, which is located in Chaffee, Missouri, to force the payment of the two notes signed by her husband. The Enterprise Mill Company of Chaffee did bring such an attachment suit and the same was pend-

ing at the time of the execution of the two notes here sued on. On the afternoon that Lilles visited Cairo, Mrs. Kellems met him on the street, and told him that she had just started to get a lawyer to defend her; when Lilles said, "I want to go to the house and talk to you." Accordingly, the two turned and went back to the home of Mrs. Kellems and had a talk regarding the two notes due by her husband. In that conversation Lilles said, "I am over here to attach your property in Chaffee;" whereupon she began to cry. She said, "It looks like it's worrisome enough to be bothered with a drunk man, let alone all the lawyers in the country; if you will leave me alone—Mr. Kellems don't own this property, it's mine—I will give you my interest in them two lots if you will leave me alone." Lilles replied that that would be all right and she gave him the deed to the vacant lots, known as the Weiner lots. Lilles took the deed in order to get the description of the property and the next morning between seven and eight o'clock he came to Mrs. Kellems' bedroom with a deed of trust on the Weiner lots, given to secure the payment of two notes, the notes in question. At that time Mrs. Kellems said, "Look here, Mr. Lilles, I want you to understand I will not sign nothing in any way that will touch my home, for I have a crippled child, and that home is all I have got and I won't sign nothing you can touch my home on." Lilles said, "Absolutely not, this is just on the Weiner lots. You read it over and see." Mrs. Kellems did read over the description in the deed of trust, and saw that the Weiner lots were all the property described. When Lilles handed her the notes she said, "No, they have been trying to get me on a note to renew this note for a year and I won't sign it." Whereupon, Lilles said, "They can't touch your home with these notes; all the lawyers between you and hell can't touch your home. Them notes is just to make this deed a trust deed; without them the deed of trust is no good." Mrs. Kellems again told him that she would sign nothing that would touch her home; that she was not under any obligation to pay her husband's debts. Lilles again assured her that by signing the notes she would not be liable, only to the extent of her interest in the Weiner lots, and that they absolutely could not touch her home with these notes. Mrs. Kellems again told him she would not be responsible for the notes; and Lilles assured her that it would not put her under any obligation whatever, any responsibility; that the notes would not bother her home. Thereupon, Mrs. Lilles signed the two notes. Later on she sent her husband down to see Lilles before he took the boat back to Missouri and to ask what was included in this matter, and Lilles assured him that nothing but the Weiner lots were included.

In rebuttal, Mr. Lilles testified for plaintiff—appellant—that he lived in Chaffee, Missouri, had been a practicing lawyer for thirty years, knew the defendant G. B. Kellems and saw him shortly before October 21, 1922, in Cairo, Illinois. The occasion for his going there was to collect two notes belonging to plaintiff and signed by defendant G. B. Kellems. He called at Kellems' place of business and Kellems suggested the giving of a deed of trust on the Weiner lots. Accordingly, Lilles telephoned the cashier of appellant and he said that that would be satisfactory. In the conversation on that day Kellems told Lilles that his wife would not sign a deed of trust on her home place, so Lilles came back to Scott County, where he filed two attachment suits in the circuit court, one in the name of W. H. Adams and the other in the name of appellant, the defendant in both cases being G. B. Kellems and a man by the name of Stubbs. Lilles testified that he took the summons to Cairo to see personally that it was served promptly, and that was the occasion for his going there the second time, on October 21, 1922, though he did not have the summons served and never went to see the sheriff about serving it. Lilles told Kellems that he must have a settlement, or he would attach his place and try it out. Kellems told him that he had two pieces of property in Chaffee, the two vacant lots that he bought from a man named Weiner, also his wife's home in Chaffee. He suggested that Lilles go to his residence and talk the matter over with Mrs. Kellems. Lilles started, but met Mrs. Kellems on the street and told her what he was coming to see her about. She told him she was just out looking for a lawyer, that they had attached her rents at Chaffee and she was going to straighten the thing out. Accordingly, the two walked up to Mrs. Kellems' house and talked the matter over. Lilles told her that he intended to attach Mr. Kellems' property, and she said that she was willing to give a deed of trust on his property, but not on her home. Lilles told her that would be perfectly satisfactory, and he went to the Holliday Hotel where he prepared a deed of trust and the two notes. The next morning he again visited Mrs. Kellems at her home, and she said she would sign the notes and deed of trust, which she did, and a notary named Foster was called in and took the acknowledgment. Before signing the notes, however, he admitted she said, "Mr. Lilles, I am not signing anything against my home?" To which he replied, "No, madam, so far as this paper is concerned, all the lawyers between here and hell couldn't get your home with this deed of trust." He called her attention to the fact that her home was not included in the paper she was signing. After she signed, Mr. Lilles and the notary visited Mr. Kellems' place of business, and he also signed the notes and the deed of trust; whereupon, Lilles told him he would dismiss the at-

tachment suits. Accordingly, he told the circuit clerk to dismiss them and send him a bill for the costs. He was not certain that the costs had ever been paid or that the suits had ever been dismissed. Mrs. Kellems was anxious to have an attachment dismissed that had been brought by the Enterprise Mill Company of Chaffee, against Mr. Kellems, wherein they had tied up her property and Mr. Lilles agreed to straighten that matter out for her. Mr. Lilles insisted that he told Mrs. Kellems that he had already attached her property, and that he would release the attachment if she would sign the notes. On his first visit to Mrs. Kellems' house she agreed to sign the deed of trust provided her home was not in it, saying that she had a crippled child and wanted to save her home. Mr. Lilles sympathetically said, "I don't blame you." Mrs. Kellems spoke of her husband being a drunkard and that she did not want to sign anything that would involve her home. Mr. Lilles admitted that he knew that her signing the notes would entitle his client to judgment which would be a lien on all her property. He further admitted that he did not tell Mrs. Kellems that by signing these notes in case they were not paid she would be personally liable on them.

I. Counsel for appellant insists that the answer does not state facts sufficient to justify a finding for the defendant. But it must be remembered that counsel filed a demurrer to the answer and afterwards filed a reply thereto. It has been long the settled law of this State that the filing of a reply waives every objection made by the demurrer to the answer, except the objection that the answer does not state facts sufficient to constitute a defense. In a well-considered opinion this court held that the filing of an answer was tantamount in law to a withdrawal of the demurrer and an abandonment thereof; and the same rule holds regarding the filing of a reply when a demurrer to an answer is pending. [State ex rel. v. Bright, 224 Mo. l. c. 525; Dunklin County v. Clark, 51 Mo. l. c. 61; Henley v. Henley, 93 Mo. l. c. 95.]

II  Next in order, counsel for appellant insists that the answer does not state sufficient facts to entitle defendant to recover. In order to fully understand this point, we here quote from the answer, which, after a general denial, alleges:

"Defendant further answering alleges and charges the facts to be that on the 21st day of October, 1922, she and her husband, G. B. Kellems, were temporarily staying at Cairo, Illinois;

8

that the said G. B. Kellems, her husband, owed the plaintiff, and the First National Bank of Chaffee, Missouri, certain notes; that one W. H. Adams was security on the notes due said First National Bank of Chaffee, Missouri; that on the said 21st day of October, 1922, the attorney for this plaintiff and said W. H. Adams came to the defendant in the city of Cairo, Illinois, and told her he was there for the express purpose of attaching her home, and that unless she helped her husband, the said G. B. Kellems, take care of these said notes he would cause an attachment to be levied on her home in Chaffee, Missouri, which would cause her great annoyance, humiliation, trouble and expense; that she told this said attorney for plaintiff that she would not sign a note for her husband or obligate herself in any way, so that a claim could be made against her, whereby she would be liable for any of her said husband's obligations; that said attorney kept up his said threats, and this defendant told him she and her husband owned some vacant lots in the city of Chaffee, Missouri, that they would be willing to pledge as security for said indebtedness; that said attorney told her this would be agreeable and accepted; that he then prepared a trust deed and these notes sued on and asked her to sign; that on account of the threats above stated she signed the trust deed, but refused to sign the notes, but this said attorney again threatened her with attachment proceedings as above stated, and told her that the trust deed would not be any good unless she signed the notes and that she was in no way obligating herself personally by signing them, other than pledging her dower interest in the lots by signing the notes, and that she could not be held for the payment of the notes as the trust deed took care of that; that she again told him she was not going to obligate herself in any manner, whereby she would become liable for her husband's debts, and her home in Chaffee, Missouri, probably sold to pay same, as that was all she had and she wanted to keep it, but this said attorney again advised her that she would not be liable to a greater extent than the interest she had in the lots, covered by the trust deed, and if she would sign the notes all the lawyers in the world could not cause her home to become involved; defendant says she never has had any business or legal experience, and knowing this attorney to be a lawyer with much experience, she placed sufficient confidence in him through the threats aforesaid, and his persistent argument to sign said notes, believing him to be telling her the truth, and that she only signed said notes by reason of his threats, and with the understanding that she was signing them to make the trust deed valid, and that by reason of the statements, representations, threats and conduct of this said attorney as aforesaid, her signature was caused to be placed on said notes by fraud and duress.

"Wherefore, having fully answered, defendant prays that the notes described in plaintiff's petition be cancelled, and declared null and void as to this defendant, by the judgment of this court, and that defendant may go hence without day, together with her costs in this behalf expended."

We have no hesitation in saying that if respondent (defendant) had been able to establish all the facts set up in this answer, she would have been entitled to judgment. Fraud and duress are sufficient to vitiate a contract, note or other obligation; and the answer fully details facts sufficient to inform the court and opposing counsel that both fraud and duress existed at the time of the execution of the notes sued on.

III. It will be noted that the answer alleges duress and fraud in defense of the notes sued on.

(a) In view of the allegation of fraud and the proof offered in support thereof, it will not be necessary to consider the question of duress. However, the student interested in such question may read with profit the case of Mississippi Valley Trust Company v. Begley, 252 S. W. l. c. 78-9, also 13 Corpus Juris, sec. 319, page 402.

(b) It is true that as a general rule an action for fraud cannot be based on misrepresentations of matters of law unless there is a relation of trust or confidence between the parties. [12 R. C. L. p. 296, sec. 60.] We will not discuss the question of alleged confidential relations existing between Mrs. Kellems and Mr. Lilles, although the testimony of Lilles strongly tends toward establishing such a relation. He said: "She [Mrs. Kellems] made a condition that she would sign this deed of trust and notes if I would get an attachment matter pending then by the Enterprise Mill Company of Chaffee against Mr. Kellems, wherein they had·tied up her land, and I told her I would straighten that matter out. I did straighten that matter out and saw the druggist mail her a check for the full amount due her." But we will consider another well-recognized exception to the above general rule. Where one party has a superior knowledge of the law, makes statements regarding the law that are misleading, and the other party, relying on such superior knowledge and statements, is induced to execute an obligation, to his injury, such conduct constitutes a fraud. Many authorities support this proposition.

In a case where a woman signed a deed of trust on her homestead after urgent persuasion by the attorney for the party procuring the deed of trust, in which he stated to her that sh was incurring no liability and that its execution was a mere form, the court held

that such representation constituted a fraud, even though there was no relation of special trust or confidence existing between her and the attorney. [Ramey v. Allison, 64 Tex. 1. c. 702.]

Where a party was deceived as to his rights under the law, the New York Court of Appeals said: "It is equally well settled that where there is a mistake of law on one side, and either positive fraud on the other, or inequitable, unfair and deceptive conduct, which tends to confirm the mistake and conceal the truth, it is the right and duty of equity to award relief." [Haviland v. Willets, 141 N. Y. l. c. 50.]

And the Alabama court said: "An advantage, gained by a false statement of the law, made by one who knows what the law is, and that the other party is ignorant of it, and is relying upon his statement, will constitute fraud." [Lehman v. Shackleford, 50 Ala. 1. c. 439.]

In a case where the execution of a deed was procured upon representation as to the legal effect of the instrument, it was argued that equity would not afford relief, but the Supreme Court of Massachusetts said: "And it has been held that although a misrepresentation as to the matter of law may not of itself constitute an actionable fraud, yet any misrepresentation of the legal effect of a deed or other instrument which has deceived one who had justifiably reposed special trust and confidence in the maker of such representation may constitute such fraud." [Busiere v. Reilly, 189 Mass. ] c. 521.]

The Arkansas Supreme Court, in speaking of ignorance of the law being no excuse, said: "Yet there are cases in which this court will interfere upon the ground of such mistake, in order to relieve a party from the effect of a contract. As for instance, if one is ignorant of a matter of law involved in the transaction, and another knowing it to be so, takes advantage of such circumstance to make the contract, here the court will relieve." [State v. Paup, 13 Ark. 1. c. 137-8.]

And the Kentucky Court of Appeals held that, where a lawyer represented a party and made representations to another party in order to procure a deed, making false representations regarding the law applicable to the title conveyed, the second party being ignorant of the law and supposing that the lawyer knew what he was talking about and was telling the truth, as such representations were false, the deed should be set aside. [Bridgewater v. Byassee, 29 Ky. L. R. l. c. 379.]

In a case where fraud was alleged in securing the execution of a deed, and a lawyer made certain representations to the plaintiff regarding the legal effect of such deed, which were false, the Supreme Court of Oklahoma, in speaking of the rule that everyone is pre-

sumed to know the law, said: "One of the exceptions is that, where one of the parties has had a superior means of information, professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant, then a cause of action will lie as if the misrepresentation had been concerning a matter of fact." [White v. Harrigan, 186 Pac. 1. c. 228.]

The holder of a note died, and the attorney of the administrator stated to the maker that the note was still a valid obligation, whereas he knew that the note was barred. Accordingly, the Virginia Supreme Court of Appeals held that such statement, made by one who knew the law and addressed to one who did not know it, constituted fraud. [Brown v. Rice, 26 Gratt. 467.]

And the West Virginia Supreme Court of Appeals said: "Where there is a misrepresentation or fraudulent concealment of superior knowledge acquired, a court of equity will intervene and rescind a contract thus obtained by fraud or misrepresentation." [Tolley v. Poteet, 62 W. Va. 1. c. 251.]

Bigelow, after stating the general rule that a misrepresentation of law affords no ground for redress or relief, says: "It is not however universally true that a misrepresentation of the law is not binding upon the party who made it . . . Indeed where one has had superior means of information, professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant, and has not been in a situation to become informed, the injured party is entitled to relief as well as if the misrepresentation had been concerning a matter of fact." [Bigelow on Fraud, pp. 487-8; 12 R. C. L. 295-6; 20 Cyc. 19-20.]

On the same subject, another author has said: "A misrepresentation of a matter of law does not constitute fraud at law, because the law is presumed to be equally within the knowledge of all the parties. . . . But if a man dealing with another misleads him, and takes advantage of his ignorance respecting his legal position and rights, though there may be no legal fraud, the case may come within the jurisdiction exercised by courts of equity to prevent imposition." [Kerr on Fraud and Mistake, p. 90; Champion v. Woods, 79 Cal. 1. c. 20; Abbott v. Treat, 78 Me. 1. c. 126; Berry v. Whitney, 40 Mich. 1. c. 72; Kyle v. Fehley, 81 Wis. 1. c. 71.]

Does the conduct of Lilles, as disclosed by the evidence, bring the case within the exception to the rule, to-wit, one party having a superior knowledge of the law and the other party relying on such superior knowledge and believing his statements to be true? We are of the opinion that it does.

Prior to seeing Mrs. Kellems, her husband told Lilles that she would not sign a deed of trust on her home place; and several times

she made that statement and reiterated it to Lilles. The most that she was willing to do, according to her positive statement, was to sign a deed of trust on the Weiner lots. For that purpose, and with that agreement, she loaned Lilles the deed to the Weiner lots in order that he might get the description of the property. On the next morning, at the time the deed of trust was being executed, she again told him that she would not sign a deed of trust on her home place, and she was assured by Lilles that she was not signing anything tha' would affect that home. Note the language that he used, as shown in the accompanying statement: ''They can't touch your home with these notes; all the lawyers between you and hell can't touch your home. Them notes is just to make this deed a deed of trust; without them the deed of trust is not good.'' In order to get her to sign the notes, he stated that she was simply signing her dower interest in the Weiner lots and that the deed of trust would not be worth anything without the notes. With that understanding and upon his assurance that such papers would not affect her home place, she signed the notes in question. Fraud may be committed by direct acts, and it may also be committed by an act of concealment. If Mr. Lilles had told Mrs. Kellems the truth, that the notes she was signing could be the basis of a suit against her later on (i. e. the present action), and the judgment obtained a lien on her home place, she would certainly not have signed the notes. Everything she said indicates that. He knew it was not necessary for her to sign the notes in order to validate the deed of trust, for he testified he had thirty years' experience in the practice of law. Mrs. Kellems was greatly distressed, on account of the threats made by Mr. Lilles in letters to her and by the fact that he was there, as he said, to attach her property. She showed how greatly she was worried by the tears that she shed and the expressions that she used regarding her crippled child and her drunken husband. She did not understand the law of commercial paper, and Mr. Lilles, as a lawyer, owed her and the profession the duty of telling her the truth, instead of misleading her, even though they ''stood at arms length.'' Under all the evidence, the obtaining of the notes in question constituted a fraud, and a court of equity should never tolerate the perpetration of the fraud.

IV. The evidence of the witness Lilles does not make out as strong a case of misrepresentation as does the testimony of Mrs. Kellems. From the finding, it seems that the chancellor accepted the testimony of Mrs. Kellems, corroborated as she was by her husband and her daughter. To this finding the higher court should defer, although not bound by it in an equity case. But taking the testimony of Lilles, evasive in some particulars as it was,

it is sufficient to justify the chancellor in finding for Mrs. Kellems. In his testimony, Lilles admits that Mrs. Kellems made it plain to him that she did not want her home place affected by anything that she might execute, yet he permitted, yes persuaded, her to sign two notes, well knowing that said notes would constitute an obligation on her part and could be the basis of a suit against her, and if judgment was rendered on said notes, the same would be a lien on her home place. He knew that it was not necessary for her to sign the new notes in order for the deed of trust securing them to be valid; he knew that the new notes or the old notes could be secured by a deed of trust on the Weiner lots, and that Mrs. Kellems could convey her interest in said lots by simply signing the deed of trust. A lawyer with much less experience than thirty years knows that. He was dealing with a woman greatly distressed and misinformed regarding her legal rights, as well as unrepresented by counsel. It must be remembered that Mr. Lilles, on meeting Mrs. Kellems on the street and learning that she had just started to get a lawyer to defend her, asked her to go to the house and talk with him, which she did. Under such circumstances, his action should have been characterized by utmost good faith and fair dealing. Yet, he does not claim to have told Mrs. Kellems of the law concerning her liability on the notes; but according to his testimony, kept quiet and permitted her to do, and by persuasion induced her to do, that which he knew would result in the very thing that she was trying to avoid and which he knew she was trying to avoid. This constituted fraud.

"Fraud may consist in silence as well as in outspoken representation." [Bispham on Equity, sec. 213; 2 Pomeroy's Equity Jur., secs. 900-1; 1 Story's Eq. Jur. sec. 270.]

"Silence implies assent when there is a duty to speak. If a man by his silence produces a false impression on the mind of another, there is a fraud." [Kerr on Fraud and Mistake, p. 100.]

V. It is suggested in the brief for appellant that "the notes herein sued on were executed in consideration of the pending attachment suits being dismissed. The evidence shows that G. B. Kellems had conveyed the attached property to respondent after the indebtedness to appellant had been created, and we submit that under the law of this State a man cannot be generous before just, and when a man conveys his property to his wife without consideration, that title vests in the wife subject to the husband's debts, and the husband's creditors can sell the property so conveyed under an execution, and a good title thereto will pass."

Whether the husband of respondent was guilty of fraudulently conveying his property to her after the execution of certain notes

14

to appellant is a question we are not called upon to decide, for the very good reason that there is nothing said on that subject in either the petition, answer or reply. We try only cases that are presented to us in orderly pleadings. If a fraudulent conveyance was executed, the appellant has its proper remedy, and should proceed according to the statute and the rulings of this court in numerous decisions. The fact that it has not seen fit to proceed by such a suit should not prejudice this case against appellant, neither is the case of respondent to be prejudiced by reason of the statement of appellant's counsel to the effect that the conveyance of the home place to respondent was for the purpose of hindering and delaying and defrauding the creditors of her husband. In other words, we try only the case that is before us, uninfluenced by what kind of a case could, should or may be brought, or what counsel have to say regarding such other case.

The finding of the chancellor being in accordance with the views herein expressed, the judgment is affirmed. All concur.