**HARTLEY REALTY COMPANY, a**
Corporation, Respondent,

v.

**John CASADY, Appellant.**

No. 23043.

Kansas City Court of Appeals.
Missouri.

Feb. 1, 1960.

———◆———

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, for appellant.

Herbert S. Brown, Trenton, for respondent.

MAUGHMER, Commissioner.

In this case there was a jury verdict for defendant on plaintiff's petition and for plaintiff on defendant's counterclaim. Judgment in accordance with the verdict was duly entered. The court thereafter set aside the judgment on the petition for defendant and entered judgment for plaintiff in the sum of $3,000. The court also enjoined defendant from operating as a real estate broker and salesman in the Grundy County area prior to June 11, 1959.

On August 30, 1950, R. E. Broyles and Carl Hartley, two young men not long out of the University of Missouri School of Agriculture, and desiring to associate together at Trenton, Grundy County, Missouri, as brokers and salesmen of real estate, incorporated the proposed business venture as Broyles and Hartley, Inc. In August, 1952, Mr. Broyles sold his entire interest in the business to Mr. Hartley. The corporate name was thereupon changed by amendment to Hartley Realty Company. Thereafter on May 24, 1956, Mr. Broyles repurchased the business. According to the record Hartley Realty Company continued to exist as a corporate entity, but in advertising and generally otherwise, Mr. Broyles operated the enterprise under the trade name of "Bob Broyles Land and Loan Company".

The defendant John Casady, 60 years of age at the time of trial, was a native of and had always resided in North Central Missouri. Before 1955, his business had been farming and distributor by tank wagon of petroleum products in rural areas. He had never completed the 8th grade of school and in 1955, after major surgery, determined to change to a less physically demanding occupation. He moved to Trenton, bought a home there through the Hartley Agency and planned to engage in the real estate business. Learning of this intention, Mr. Hartley invited and urged him to work for the Hartley Realty Company as a salesman. It is undisputed that Mr. Hartley told the defendant Casady

that he could not be licensed as a real estate broker unless he had first served a six months' apprenticeship as a salesman working with a licensed broker. Mr. Hartley repeatedly urged Casady to become his employee and prepared a written contract therefor. In addition to setting forth the details of the proposed employment this contract provided that Casady should not engage in the real estate business in Grundy or surrounding counties within three years after termination of such employment, and carried a $3,000 liquidated damages penalty if he did so engage. Hartley continued to urge Casady to sign the contract and commence working for him. Defendant demurred and finally, on August 23, 1955, Hartley took him to the law offices of a practicing attorney in Trenton. This practicing attorney had acted as Mr. Hartley's lawyer when the business was originally incorporated but he was also the defendant Casady's nephew. He endorsed Hartley's statement that a six months' apprenticeship was a prerequisite requirement for taking the examination for a real estate broker's license. This lawyer testified at the trial. He freely admitted his error in making such statement and declared simply that he just assumed Hartley "knew what he was talking about". In any case, a few minutes later, defendant signed the contract and admittedly knew it contained the restriction and penalty provision.

Casady immediately thereafter entered upon his work as salesman for the plaintiff Hartley Realty Company, and was instrumental in effecting some sales. In the spring of 1956, on a chance visit to Jefferson City, Mr. Casady learned from John W. Hobbs, Secretary of the Missouri State Real Estate Commission, that it was not necessary to serve a six months' apprenticeship before being examined for a broker's license. He, therefore, in the spring of 1956, took the examination, was successful and was duly licensed. Within a few weeks after May 24, 1956, when Broyles bought the business, and on June 11, 1956, Casady quit. According to the

evidence he had some discussion with Mr. Broyles about moving to Smithville, but he did not do so and almost immediately started his own real estate business in Trenton. He was at least moderately successful and received some sales commissions.

■ Plaintiff's petition asked judgment for the stipulated $3,000 penalty and an injunction restraining defendant from engaging in the real estate business. The defense was fraud and misrepresentation on the six months' apprenticeship issue, and a counterclaim for $1,728.50 actual damages (the sum defendant allegedly lost through having had to share his earned sales commissions with plaintiff company), and $3,000 punitive damages. The court submitted defendant's defense, that is, the issue of fraud and misrepresentation to the jury, and the jury returned its verdict for the defendant. Judgment for defendant on plaintiff's petition was duly entered. All after trial motions were overruled except plaintiff's motion for new trial as to the issues raised by its petition, its motion to set aside the verdict thereon and plaintiff's motion for directed verdict and judgment, as submitted at the close of the evidence and after verdict, were each sustained and the court entered judgment for plaintiff on Count 1 of its petition in the sum of $3,000. There was likewise a finding for plaintiff under Count 2 for injunctive relief and defendant was enjoined from engaging in the real estate business in Grundy and surrounding counties prior to June 11, 1959 (three years after his employment with plaintiff was terminated). This injunction feature which expired June 11, 1959, is, of course, now a moot question.

Defendant perfected his appeal and charges the trial court erred (1) In setting aside the jury verdict, thereby ruling, as a matter of law, that plaintiff's misrepresentations, even if proved, did not amount to a valid legal defense; (2) In ruling such misrepresentations to be a misstatement of law rather than a misrepresentation of fact,

and (3) In admitting the real estate salesman contract in evidence since it was not signed by authority of plaintiff's Board of Directors, but only by Hartley, the president, and that it was, therefore, the president's personal, rather than the company act.

■ We believe that the contract was properly received in evidence and that it was a contract of the Hartley Realty Company. We think, too, that the alleged misrepresentations were misstatments of law rather than of fact. There is really no dispute as to the facts in this case. There can be no question but that Mr. Hartley many times told defendant that he could not secure a real estate broker's license without serving the six months' apprenticeship. It is also freely admitted that the defendant refused to sign the contract until he was told by the lawyer that such was the law. It seems to us that this case must be decided by a determination as to the legal effect of such admitted misrepresentations.

"As a rule false representation, to constitute fraud, vitiating a contract, must be a representation of fact, and an erroneous representation or statement of a matter of law is not a fraud. False representations as to the legal effect of an instrument are no bar to an action thereon, as a party signing such an instrument is presumed to know its contents, and has no right to rely on the representations of the other party as to its legal effect. However, misrepresentations of law may constitute fraud avoiding contracts where the speaker sustained a confidential relation toward the hearer, or *possessed superior means of information,* or wilfully misled him into a misconception of his rights and liabilities". 17 C.J.S. Contracts § 158, p. 511. See, also, to the same effect, 12 Am. Jur. Contracts, Sec. 140, pp. 633 and 634. (Italics supplied.)

Clearly, the misrepresentations complained of and admittedly made in this case are misrepresentations of law and not mis-

representations of fact. Therefore, the action of the trial court in setting aside the verdict of the jury and entering judgment for plaintiff under the contract is proper unless this case comes under one of the recognized exceptions to the rule that a misrepresentation of law is no defense. We do not believe that it can be said that Mr. Hartley, representing the plaintiff, occupied a confidential relationship toward the defendant. To determine whether or not the misrepresentations were made by those who had greater knowledge and superior means of information is a closer question, and involves examination and consideration of some of the decisions on the question.

In Easton-Taylor Trust Co. v. Loker, Mo.App., 205 S.W. 87, the maker induced his cousin, who was ignorant of matters of business, to indorse a note under his representations that she was legally obliged to do so as the beneficiary under a former indorser's will. The plaintiff Trust Company, which brought suit on the note, was present by its officer and counsel when the statements were made. The court held that under these circumstances even though the misrepresentations were as to law, rather than fact, it presented a good defense on the basis of both superior knowledge and fraud.

The Supreme Court of Missouri in Security Sav. Bank v. Kellems, 321 Mo. 1, 9 S.W.2d 967, considered the effect of misrepresentations of law which were made by an attorney. In that case plaintiff held two notes signed by defendant's husband, who apparently owned no property. His wife, the defendant, owned her home and two vacant lots nearby. The plaintiff was pressing the husband for collection of the notes. Its lawyer met the defendant wife, who offered to give a deed of trust on the two vacant lots. She said she would sign no papers that would cause her to lose her home. Plaintiff's attorney drew up a deed of trust for the two vacant lots and he also told her that it would be necessary that she sign two new notes;

that otherwise, the deed of trust to the vacant lots would not be good, but that her home would not be involved. Of course, when she signed these notes they were susceptible of reduction to judgment and her home would thereby become involved. The court held that these misrepresentations of law arose from a superior knowledge, were fraudulent and constituted a good defense. In the opinion the court sets forth the facts briefly in other cases from other jurisdictions which arrive at the same results.

In Bridgewater v. Byassee, 93 S.W. 35, 29 Ky.Law Rep. 377, loc. cit. 379, it was held that where a lawyer representing one party, made representations to another party which were false in law, where the second party was ignorant of the law and supposing the lawyer knew what he was talking about, it was held that such representations arose from superior knowledge and would afford a basis for setting aside the deed.

In White v. Harrigan, 77 Okl. 123, 128, 186 P. 224, loc. cit. 228, 9 A.L.R. 1041, the Supreme Court of Oklahoma said: "One of the exceptions is that, where one of the parties has had a superior means of information, professes a knowledge of the law, and thereby obtains an unconscionable advantage of another, who is ignorant, then a cause of action will lie as if the misrepresentations had been concerning a matter of fact".

The West Virginia Supreme Court of Appeals said: "Where there is misrepresentation or fraudulent concealment of superior knowledge acquired, a court of equity will intervene and rescind a contract thus obtained by fraud or misrepresentation". Tolley v. Poteet, 62 W.Va. 231, loc. cit. 251, 57 S.E. 811, loc. cit. 820.

Pomeroy's Equity Jurisprudence, Fifth Edition, Misrepresentations of Law, Sec. 877a, pp. 429, 431, says: "A misrepresentation of the law is not considered as amounting to fraud, because, as it is generally said, all persons are presumed to

know the law; and it might perhaps be added that such a statement would rather be the expression of an opinion than the assertion of a fact. * * *.

"On the other hand, a misrepresentation as to a matter of law may be actionable where one who himself knows the law deceives another by misrepresenting the law to him, or knowing such other to be ignorant of it, takes advantage of him through such ignorance, or where the person to whom the representations are made *relies on the supposed superior knowledge and experience of the other party * *"*. (Italics supplied.)

■ Of course, the presumption that everyone knows the law is one of necessity and is as old as the law itself, and has recognition in the jurisprudence of all civilized countries. Orderly government could not exist if everyone at will could interpose his ignorance of the law in defense when the enforcement of his contract is sought in the courts. The presumption that everyone knows the law is necessary not because all persons do know the law, but because it would be a defense which everyone could raise and which it would be impossible to disprove.

■ If two persons, neither of whom has or professes to have any special knowledge of the subject, make a contract, even though one has misrepresented the law applicable thereto, we think the contract would be valid, binding and enforceable. And in our particular case, even though Mr. Hartley possibly possessed and certainly professed to have superior knowledge, a court might well hold that it was incumbent upon Casady to employ his own lawyer and find out for himself. However, in our case Casady refused to sign even after several representations made to him by Hartley that he would be required to serve a six months' apprenticeship. It was only after Hartley called the lawyer and took the defendant to the law office and the lawyer joined in such representations as to what the law was, that Casady's reluctance

to sign was overcome and he entered into the agreement. Certainly, these representations coming from Mr. Hartley, who was engaged in the real estate brokerage business, and then from a practicing attorney, amount to representations from those who professed to have, might reasonably be expected to have, and really should have had a higher degree of knowledge on the subject.

We think the jury was justified in finding for the defendant under such a defense, and that it was improper for the court to set aside such verdict and enter a judgment for the plaintiff. To sustain the court's ruling we would have to hold that even though the parties making the misrepresentations of law as established under the facts here, had superior knowledge, and even though defendant relied thereon, nevertheless, a defense based thereupon must be, as a matter of law, denied and refused. We think that the exception, where there is much greater, superior knowledge is a valid one and is supported by the decided cases. We believe that where misrepresentations as to law, even though made innocently, were made to a just retired elderly farmer, who had never completed the 8th grade, by a duly licensed real estate broker and a practicing attorney, that the test is met, and that reason suggests and the law will permit, a defense thereunder.

The judgment is, therefore, reversed and the cause remanded with directions to reinstate the verdict and judgment entered thereon for the defendant under Count 1 of plaintiff's petition.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

BROADDUS and HUNTER, JJ., and SAM C. BLAIR, Special Judge, concur.

CAVE, P. J., not sitting.