**FOREST HILLS CONSTRUCTION COMPANY, Plaintiff-Appellant,**

v.

**CITY OF FLORISSANT et al., Defendants-Respondents,**

**Northwestern Savings and Loan Association, Cross-Defendant-Appellant.**

**No. 59682.**

Supreme Court of Missouri, En Banc.

Jan. 9, 1978.

Rehearings Denied March 13, 1978.

Robert L. Inman, Joel F. Graziani, Clayton, for plaintiff-appellant.

Shulamith Simon, Wm. Guerri, Edwin D. Akers, Jr., St. Louis, for defendants-respondents.

HENLEY, Judge.

This is a declaratory judgment action involving the ownership of $43,200 held in an escrow account by defendant, Northwestern Savings and Loan Association (Northwestern). This amount represents the total of sewer connection fees paid into the escrow account by and in the name of plaintiff, Forest Hills Construction Company (Forest Hills) pursuant to written agreements with defendants, City of Florissant (City) and Metropolitan St. Louis Sewer District (MSD). Forest Hills sought a judgment declaring that it is entitled to the money deposited in escrow, contending that under the law it is the owner thereof. The City

and MSD filed a joint answer and a cross-claim. In their answer to Forest Hills' petition they sought a judgment that the City is entitled to the funds in escrow. They did not seek judgment against Forest Hills for dividends earned by the escrow account and paid to Forest Hills or for interest thereon. In their joint cross-claim they sought (1) an order adding Northwestern as a party defendant; and (2) a judgment against Northwestern that it pay the escrow fund to the City "plus accumulated dividends thereon and interest on each payment made to said fund from the date of each payment." Northwestern made no claim to the money; it sought only an order directing that it be authorized to pay it to whomever the court determined was legally entitled thereto. Trial to the court resulted in a judgment (1) against Forest Hills on its petition; and (2) in favor of the City and against Northwestern on the cross-claim that it pay "the escrow fund to the City * * * and any accumulated dividends thereon and interest on each payment made to such fund from the date of each payment." Upon appeal by Forest Hills and Northwestern to the Court of Appeals, St. Louis district, the judgment was modified to provide that the escrow account bear interest from December 18, 1958, the date of a judgment in another action involving the City and MSD. As modified, the judgment was affirmed. We sustained the separate applications of Forest Hills and Northwestern and ordered the case transferred to this court, primarily to review the award of accumulated dividends and interest.

On January 12, 1953, the City adopted its Ordinance No. 391, requiring, inter alia, the payment of a sanitary sewer connection fee of $200 for each home or building erected on any lands annexed by the City subsequent to that date. This fee, to be paid to the City Clerk as a condition precedent to the issuance of a building permit for each home, was required to be deposited in a special fund and used for the construction or repair of a sewage disposal plant. In the event of construction of a main trunkline sanitary sewer, the fund could be used to pay for such construction or to pay bonds issued for that purpose. The ordinance further required that no annexation request be considered until the owners of any lands to be annexed had executed an agreement with the City providing that they would comply.

On February 9, 1954, the people of the city of St. Louis and St. Louis county by their vote approved a plan for organization of MSD. After organization, MSD adopted a policy governing the procedure for applicants seeking approval of subdivision sanitary sewers where trunkline sewers were not available. It also provided for and required payment of $200 for each home or building erected within an area of MSD not then served by a trunkline sewer, this money to be used for the construction of such sewer.

In 1955, Forest Hills and the owner of certain land located outside the corporate limits of the City of Florissant entered into a contract in which Forest Hills agreed to buy the land for the purpose of developing it into a single-family residential subdivision to be known as "Florland." A condition of the contract was that the land be annexed by the City. The annexation was accomplished and the purchase of the land completed. Forest Hills was aware of the sewer fee requirements of Ordinance 391 when it became involved in the purchase of this land.

Pursuant to an agreement dated February 10, 1956, Forest Hills and another land developer installed a temporary basin for sewage from areas they were developing.

By early 1956 a dispute had developed between the City and MSD concerning their respective rights to collect sewer connection fees from subdivision developers. As stated, the City and MSD were each authorized by action of their respective governing boards to collect a connection fee of $200 for trunkline sewer purposes. This dispute resulted in a declaratory judgment action filed in March, 1956, by the City against MSD to determine which one had a right to collect the connection charge.

Confronted with these circumstances, Forest Hills and the City entered into a written agreement on May 1, 1956, concerning such fees for the first 52 lots in Florland subdivision. This agreement (1) recognized the legal dispute between the City and MSD; (2) recited that Forest Hills "does desire to pay to the City * * * or to whomever the Court directs, the said sum of $200.00" per lot; (3) stated the intention of the parties thereto to be that no person (subdivider-developer) should be required to pay more than "one $200.00 tap-in fee per lot in the City"; and (4) stated that they had agreed that Forest Hills "shall pay $200.00 per lot * * * into escrow with Northwestern * * * before the issuance of each building permit by the City * * * and [Northwestern] shall retain said sums until the present litigation between [the City] and [MSD] shall have been finally determined, either by court action or agreement between [the City] and [MSD]." The agreement further provided that should the court determine (1) that MSD has no authority to collect the $200 per lot fee, then Northwestern was required to pay the escrow account to the City, to be accepted and held by the City in accordance with the provisions of Ordinance 391, as amended; but that should the court determine (2) that MSD has such authority, then Northwestern shall pay the escrow account to Forest Hills. Northwestern accepted the escrow agreement and agreed to hold the money paid to it by Forest Hills "under the provisions of this Agreement." MSD was not a party to this agreement. The agreement made no mention of what disposition should be made of dividends earned by this account.

As development of the several parts of Florland Subdivision progressed, two other similar agreements were executed. The first of these, dated March 11, 1959, was executed by Forest Hills, the City and MSD. It recognized (1) that city Ordinance 391 required the payment of $200 by Forest Hills for each home or building erected on the land annexed "as a consideration for the annexation of all lands annexed by the City after passage of [the] ordinance"; (2) that MSD also requires the payment of $200 for each home or building erected within the district "where trunk sewers are not presently available" to "insure the construction of trunk sewers or treatment facilities"; (3) that a dispute exists between the City and MSD involving the right to require payment of the $200 charge which will be determined by the declaratory judgment action then pending between the City and MSD; and (4) that the City and MSD recognize "that it is unfair and unreasonable to impose both payments on each home erected and [that Forest Hills] is willing to pay to * * * [either of them] * * * $200.00 per unit but is unwilling to make more than a single payment of $200.00 per unit." Based upon these premises the parties agreed (1) that Forest Hills would pay to Northwestern, as escrowee, $200 for each unit erected; and (2) upon final determination of the suit between the City and MSD, "the fund so held in escrow shall be paid over by the escrowee in accordance with the final decision of the court," and (a) if in favor of City, the fund "shall be disbursed in accordance with * * * the ordinance," or (b) if in favor of MSD, it would be disbursed as required by "present existing escrow policy of [MSD] * * *." The second of these two agreements, dated November 13, 1959, was also executed by Forest Hills, the City and MSD. It recognizes that a declaratory judgment was entered December 18, 1958, in the action brought by the City against MSD[1] and provides (1) that Forest Hills will pay to the City $200 for each home or building erected in the annexed area then being developed

---

1. This judgment, entered pursuant to an agreement between MSD and the City, declares, in substance: (1) that city Ordinance 391, as amended, is valid and enforceable; (2) that "the collection of $200.00 per house by "MSD" * * * from property lying outside the boundaries of the City * * * where there is no escrow policy in conflict therewith, is reasonable and lawful * * *"; (3) that the ultimate aim of both parties is basically the same; and (4) that the monies collected be used for the purposes set out in Ordinance 391, as amended, under the joint jurisdiction and control of the City and MSD.

(to be deposited in the City's sewage treatment plant fund as required by Ordinance 391, as amended); (2) that both the City and MSD will issue the necessary permits in consideration of this payment, and (3) that the City and MSD have joint jurisdiction of the money thus paid and will use and disburse the same in accordance with the provisions of Ordinance 391, as amended. Northwestern was not an escrowee party to this agreement.

The collection of sewer connection fees was discontinued shortly after the voters of Coldwater Creek Subdistrict of MSD approved in August, 1960, the issuance of bonds to finance the construction of a trunkline sanitary sewer system and a sewage treatment facility.

The total amount deposited in escrow with Northwestern by Forest Hills for permits for erection of homes in Florland subdivision was $43,200. The dividends thereon, the amount of which is not shown by the record, were paid to Forest Hills.

R. M. Keeney, Jr., president of Forest Hills and of Northwestern, testified that preliminary work in preparation for development of Florland subdivision included the laying out and building of streets, utilities, storm and sanitary sewers and sewage disposal facilities; that the sewage disposal plant of the City was not adequate to handle the homes planned for Florland and those planned and being built by others in newly-annexed areas; that Forest Hills built at its expense the streets, sewers and other facilities and utilities necessary to serve Florland and much of this was completed by the time application was made for its first building permit. He also testified that one of the conditions of the purchase of the land for development as Florland subdivision was that it be annexed by the City; and, that Forest Hills became aware of Ordinance 391 and its requirement that a sewer connection fee be paid when it "got involved in the purchase of the ground" for development as a subdivision. He also testified that Forest Hills objected to payment of the $200 fee for each building permit, but agreed to deposit that amount in escrow with Northwestern as provided for in the three written agreements. He further testified that he signed these agreements as an officer of Forest Hills, but did so under compulsion of Forest Hills' need to get the building permits. In this connection, he also testified that when he signed these agreements he knew that both the City and MSD required the payment of a $200 sewer connection fee, that there was a dispute between them about this, and that these agreements were entered into as a method of securing building permits by the payment into escrow of only one $200 fee for each home to be built.

The evidence further shows that upon receipt of each of the $200 building permit fees for deposit in the escrow account, Northwestern notified the City of the payment by letter stating: "This money will be paid to either the Metropolitan Sewer District or the City of Florissant when the court has legally adjudicated which one of the two is to receive said money."

■ Forest Hills contends that it, not the City, is entitled to the funds deposited with Northwestern, because the peoples' adoption of a charter for and their organization of MSD in 1954, repealed by implication Ordinance 391 under which the City claimed authority to charge the $200 per home connection fee. The court of appeals did not reach the question this contention presents. Nor do we, for essentially the same reason; i. e.: that Forest Hills may not be heard to attack the validity of the ordinance after seeking and accepting its benefits; that it is estopped from doing so.

In *St. Louis Public Service Company v. City of St. Louis, et al.*, 302 S.W.2d 875, 879–881[1, 2] (1957) this court, en banc, said: "The rule is well settled that one voluntarily proceeding under a statute or ordinance, and claiming benefits thereby conferred, will not be heard to question its validity in order to avoid its burdens. The same or similar rules have been applied in litigation involving many different types of instruments, licenses, or other transactions. The designation used in referring to this rule or doctrine is obviously unimportant.

It is frequently called an estoppel. However, it is akin to the rule against assuming inconsistent positions and it involves the principles of waiver, election, and ratification rather, perhaps, than being limited to the precise principles of equitable estoppel. Regardless of the name of principle designated, the result is clearly the same. It precludes one who accepts the benefits from questioning the validity of the accompanying obligation." See also: *Ewing v. City of Springfield*, 449 S.W.2d 681, 688[7, 8] (Mo.App.1970) and Annotation: 65 A.L.R.2d 660, 662 (1959).

In response to the position of the City and MSD that it was estopped from attacking the validity of the ordinance, Forest Hills asserts that its 216 payments of the $200 connection fee required by the ordinance were not voluntary; that its application for and acceptance of the building permits, with its payments into escrow of the fees demanded therefor, were made under duress.[2] The basis of Forest Hills' argument in this respect is that it had invested considerable money in acquiring the land and in providing streets, water, sewer and other facilities necessary to the development of Florland as a residential subdivision, and that it stood to lose its investment if the City would not issue it permits to build the homes for which Florland had been prepared; that the City refused to issue the permits unless Forest Hills paid the connection fee; that for these reasons it was compelled to pay and deposit in escrow with Northwestern $200 for each permit issued. Forest Hills contends that for these reasons the doctrine of estoppel is not applicable in this case; therefore, it is entitled to recover the money it paid into escrow. We have considered this argument and the

cases cited in support thereof. The cases are not applicable to the facts of this case. We are not persuaded by the argument.

The trial court, in a memorandum opinion filed with its judgment, found and concluded from the evidence, including the testimony of the president of Forest Hills, that Forest Hills was "t̃ōtally familiar with the * * * facts" relative to the requirements of Ordinance 391 when it contracted to buy this land on condition that it be annexed by the City; that Forest Hills was not "compelled, coerced or otherwise put upon to sign" the three escrow contracts or to pay $200 for each building permit issued, but, on the contrary, its acts in these respects were voluntary. In this connection, the court also found and concluded that Forest Hills did not question or intend to question the legality of the ordinance requirement that it pay a $200 sewer connection fee for each building permit issued, or to protest such payment; that its concern was that it pay *one* $200 fee (not $200 to the City plus $200 to MSD) and that the $200 it did pay be to whomever would be determined to be entitled to it by either an agreement between the City and MSD or the judgment of a court.

■■■ We have reviewed the case as required by Rule 73.01 and find no reason not to sustain the judgment that the $43,200 deposited in escrow be paid to the City, *Murphy v. Carron*, 536 S.W.2d 30, 33[11] (Mo.banc 1976). Moreover, in our review we make the same findings and draw the same conclusions as did the trial court. However, we hold that the trial court erroneously applied the law in awarding interest and accumulated dividends to the City for the same period of time.

---

**2.** In support of its position, Forest Hills cites the following cases: *Union Pacific Railroad Company v. Public Service Commission of Missouri*, 248 U.S. 67, 39 S.Ct. 24, 63 L.Ed. 131 (1918); *Atchison, Topeka and Santa Fe Railway Co. v. O'Connor*, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436 (1912); *Robertson v. Frank Brothers Company*, 132 U.S. 17, 10 S.Ct. 5, 33 L.Ed. 236 (1889); *Women's Kansas City St. Andrew Society v. Kansas City, Missouri*, 58 F.2d 593 (8th Cir. 1932); *Steinger v. Smith*, 358 Mo. 39, 213 S.W.2d 396 (1948); *Brink v. Kansas City*, 355 Mo. 860, 198 S.W.2d 710 (1946); *St. Louis Brewing Association v. City of St. Louis*, 140 Mo. 419, 37 S.W. 525 (1896) (see also, per curiam opinion on motion for rehearing, 140 Mo. 419, 41 S.W. 911 (1897)); *Watkins v. Floyd*, 492 S.W.2d 865 (Mo.App.1973); *National Alfalfa D & M Co. v. 4010 Washington, Inc.*, 434 S.W.2d 757 (Mo.App.1968); *John Hancock Mutual Life Ins. Co. v. Dawson*, 278 S.W.2d 57 (Mo.App.1955).

As stated, the trial court's judgment was that the City is entitled to the accumulated dividends produced by this escrow account and interest on each payment made to the account from the date of such payments. The effect of the judgment is to award both dividends and interest for the same period of time. A savings and loan association is obligated to pay "dividends" on accounts of its accountholders, §§ 369.230 and 369.240,[3] but it is not obligated to pay, in addition to the dividends, interest for the same period. Dividends are the "earnings" of a savings and loan association defined in § 369.014(9), RSMo Supp.1971, and § 369.235 as "that part of the net income of an association which is payable to * * * the owners of savings accounts * * *," earnings in which "all account holders * * * participate equally * * * pro rata to the participation value of their respective accounts." The court erred in entering judgment against Northwestern that it pay to the City both the dividends earned by the account and interest on each deposit from the date thereof.

■ Who is entitled to the dividends earned by this account? And, if the City is entitled to all or any part of the dividends, is it entitled to interest thereon and, if so, when did interest begin to accrue?

Northwestern takes the position that it was required by law to pay the dividends, as it did, to Forest Hills, because Forest Hills was the accountholder of record on its books; that for this reason it should not now be required to pay the dividends or any interest to the City. It relies on subsection 2 of § 369.170 and § 369.235.[4] See also subsection 2 of § 369.154, RSMo Supp.1971.[5] Forest Hills contends that it was the owner of record of the account and as such was entitled, under § 369.235 and subsection 2 of § 369.154, RSMo Supp.1971, supra, to all dividends.

The City takes the position in its brief that it is entitled to (1) all dividends earned by the escrow account from the date of the first deposit therein until December 18, 1958, the date of the judgment in the City's suit against MSD; (2) interest from that date until the date of the trial court's judgment in this case on (a) total amount deposited by Forest Hills in the escrow account as of December 18, 1958, and (b) dividends described in (1) above; and (3) interest on deposits made in the escrow account by Forest Hills after December 18, 1958, from the date of each deposit until the date of the judgment in this case.

Northwestern, in response to the City's position, contends that it was not bound by the December 18, 1958, judgment, because it was not a party to that suit. It also contends it was not bound by that judgment, because (1) Forest Hills, the City and MSD thereafter entered into an agreement (dated March 11, 1959) requiring that Forest Hills continue to pay into the escrow account $200 for each building permit issued, and that it did so; and (2) that these parties thereafter entered into another

---

3. References to sections of the statutes are to RSMo 1969, unless otherwise indicated.

4. Subsection 2 of § 369.170 is as follows: "The association may treat the account holder of record on the books of the association as the owner for all purposes without being affected by any notice to the contrary, unless the association acknowledge in writing, or there is served upon it by an officer empowered to make service of legal process, notice of a pledge in which case notice of the pledge shall be entered upon the record of the account and the pledgee shall be protected."

   Section 369.235 provides, in part, as follows: "All account holders shall participate equally in dividends pro rata to the participation value of their respective accounts * * *."

5. Subsection 2 of § 369.154 provides, in part, as follows: "Savings accounts may be opened and owned by any one or more persons, * * *; shall be represented on the books of an association by a separate account in the name of the owner thereof; and * * * [a]n association shall be under no duty to determine the ownership of the funds received by it for any savings account and shall treat the account holder of record as shown by the savings account contract as the owner for all purposes. An association shall not be liable to any person claiming any interest in a savings account unless the interest of such person appears in the savings account contract * * *."

agreement (dated November 13, 1959) recognizing the December, 1958, judgment and required that Forest Hills pay the same building permit fee direct to the City to be used for purposes specified in Ordinance 391; but, that instead of making these payments direct to the City they were in fact made to Northwestern for deposit in escrow until sometime in August, 1960, at which time the City began issuing building permits without payment of the fee. Northwestern also contends, in response to the City, that it is not liable for interest for any period of time, because (1) it has not wrongfully withheld this money from the City; and (2) no demand has been made of it for the money.

We are inclined to agree with the City's argument that in connection with rights to dividends, this escrow account is not, under these facts, quite the same as the ordinary savings account in a savings and loan association; that under these facts the legal relationship of Forest Hills to this account is different from that of an ordinary accountholder or owner to an ordinary savings account, as is also different the legal relationship of Northwestern to the account and its obligations or responsibilities to the parties to the three escrow agreements.

The account was established as a result of a written agreement between Forest Hills and the City which specified its purposes and the conditions under which Northwestern would hold and pay out the amount deposited with it. Northwestern accepted this agreement and agreed to abide by its provisions. The account was recognized and continued by two subsequent agreements. The record indicates that the account was continued until sometime in August, 1960, almost two years beyond the December, 1958, judgment. Northwestern recognized these two agreements also and accepted their terms, although not a party signatory thereto, by continuing to accept each $200 deposit and by sending a letter of acknowledgment of each to the City. In each of these letters it agreed to pay the money to MSD or the City whenever certain events occurred. Northwestern thus recognized that the money in this account was owned either by MSD or the City; that Forest Hills had no interest in the money other than that it be paid to either the City or MSD. Forest Hills, by these three agreements, recognized and agreed that it was not the owner and had no interest in this account other than that it be paid to either the City or MSD, one of which was the owner.

We have the view, and hold, that under these facts Northwestern was not bound under the statutes to recognize Forest Hills as the owner of the account for dividend purposes. Section 369.170, supra, recognizes that an association may acknowledge in writing the interest of a pledgee and be bound thereby although it may otherwise treat the accountholder as the owner for all purposes. Section 369.154, supra, provides that an association may recognize one other than the accountholder as the owner of an interest in an account where "the interest of such person appears in the savings account contract." In other words, these statutes recognize that there may be exceptions to the language of the statutes that the accountholder be treated as the owner for all purposes; that in some circumstances the person in whose name the account appears on the association's books is not the owner. It may reasonably be concluded from the association's record of this account that Forest Hills was not its owner for dividend purposes; that either the City or MSD was. We also have the view, and hold, that Northwestern was not bound by the escrow agreements, or the December 18, 1958, judgment, to recognize either the City alone or MSD alone as the owner of the account for dividend purposes, because (1) the escrow agreements made no provision for payment of dividends to either one of them to the exclusion of the other; and (2) aside from the fact Northwestern was not a party to the suit out of which the judgment arose, the judgment did not award the escrow account to one of them alone but gave them joint control thereof for specified purposes. Before our decision in this case, Northwestern could have paid the dividends only to the City and MSD jointly.

It was not until the City and MSD filed their joint cross-claim against Northwestern seeking judgment *in favor of the City alone* for the escrow funds and dividends, and the entry of a final judgment thereon, that Northwestern safely could pay the dividends to either of those cross-claimants, because prior to that time there had been neither a judgment which clearly determined which one of the two cross-claimants was entitled to the funds [6] nor an agreement between them as to which one was to receive the funds. The last of the three agreements (dated November 13, 1959) between Forest Hills, the City and MSD appears to settle upon the City as the one to whom all the funds shall be paid because it provides that the $200 connection fees for subsequent building permits be paid direct to the City. However, as we have noted, they ignored this provision by continuing to pay the connection fee to the escrow account.

The City is entitled to the dividends earned by this escrow account from its beginning until the date of the judgment entered pursuant to this opinion; Forest Hills is not. Northwestern's liability therefor is based on contract: its acceptance of the deposits to the account and agreement to pay the funds to whomever was determined to be the owner thereof. The City is entitled to interest only on the judgment entered pursuant to this opinion.

Equity will not countenance a result that would require Northwestern to pay twice the dividends earned by this account. As noted, Northwestern has paid the dividends to Forest Hills. It did so because it believed that under the statutes to which it refers it was required to recognize Forest Hills as the owner of the account for dividend purposes. We have held that under the facts of this case it was not required to do so. Accordingly, it is entitled to judgment over against Forest Hills for the amount of the dividends it has paid to Forest Hills by reason of this escrow account. Upon remand Northwestern may, if it desires to do so, amend its pleading to seek judgment against Forest Hills in the amount of these dividends.

That part of the judgment in favor of the City and MSD and against Forest Hills on Forest Hills' petition is affirmed. That part of the judgment in favor of the City and against Northwestern for $43,200 on the cross-claim is affirmed. The balance of the judgment is reversed and the case is remanded with directions that the trial court determine the amount of dividends earned by the escrow account and enter additional judgments as follows: (1) in favor of the City and against Northwestern for the amount of dividends earned; (2) in favor of Northwestern and against Forest Hills for the amount of the earned dividends it has paid to Forest Hills, if Northwestern amends its pleading as herein authorized; and (3) tax the costs against Forest Hills.

BARDGETT, FINCH, DONNELLY and SEILER, JJ., and TURNAGE and DIXON, Special Judges, concur.

MORGAN, C. J., and RENDLEN, J., not sitting.