MANUFACTURERS AMERICAN
BANK, Plaintiff,

v.

John J. STAMATIS, Dan T. Sullivan,
and Wayne Stubblefield, Defendants,

John J. STAMATIS and Dan T. Sullivan,
Third-Party Plaintiffs-Respondents,

v.

EMPIRE BANK, Third-Party
Defendant-Appellant.

No. 14028.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 10, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Sept. 30, 1986.

Application to Transfer Denied
Nov. 18, 1986.

Lincoln J. Knauer, Lee Chestnut, Farrington, Curtis, Knauer, Hart & Garrison, Springfield, for defendants and third-party plaintiffs-respondents.

B.H. Clampett, William A.R. Dalton, Daniel, Clampett, Rittershouse, Lilley, Dalton, Powell & Cunningham, Springfield, for third-party defendant-appellant Empire Bank.

PREWITT, Chief Judge.

Third-party defendant Empire Bank appeals from a judgment, entered in accordance with a jury verdict, in favor of third-party plaintiffs John J. Stamatis and Dan T. Sullivan. They were each awarded $65,-672.90. The jury also found for plaintiff Manufacturers American Bank on its claim against defendants and third-party plaintiffs Stamatis and Sullivan for $76,345.79. This was reflected in the judgment as was an entry by default against Wayne Stubblefield.

Plaintiff sued defendants upon an $89,-000 promissory note they signed payable to plaintiff. Third-party plaintiffs' claim against third-party defendant Empire Bank was based upon duress and fraud which third-party plaintiffs claim caused them to sign the note.

Stamatis, Sullivan, and Stubblefield are medical physicians who, together with attorney J. Douglas Cassity, were involved in financial transactions at least partly financed by Empire Bank. Stamatis and Sullivan were shareholders in Empire Bank and were involved in a "voting trust" which controlled the bank. Cassity was a partner in the law firm which represented the bank and he was also registrar of the voting trust.

On December 8, 1977, Stamatis, Sullivan, and Stubblefield signed a printed form, "Single Payment Collateral Note", for $97,-000.00, payable to The Empire Bank. Typed in the note's left margin was "Renewal of Note No. 52403 (LD)". The three signers were shown as "d/b/a Brentwood Cattle Company".

Stamatis and Sullivan testified that in the latter part of January or the first part of February 1979 they were told by Jim Jeffries, the then president of Empire Bank, that the bank examiners were requiring that this note be "moved" because the makers of the note were "insiders". Jeffries had made arrangements with plaintiff, a "correspondent" bank with Empire Bank, to make a loan to Stamatis, Sullivan, and Stubblefield, with the proceeds to go to Empire to pay off the renewal note. There was evidence that during the period relevant here Jeffries was suffering from alcohol problems which affected his judgment and memory.

On February 27, 1979, an agreement was signed by Stamatis, Sullivan, and Cassity, providing in part that Cassity "agrees to pay 100 percent of the $97,000.00 loan at Empire Bank". The body of the agreement is set out below.[1]

Stamatis and Sullivan testified that Jeffries told them that if the loan was not moved from Empire Bank they and Empire would be subject to certain criminal and civil penalties. After "a couple of months" of urging by Jeffries, defendants signed the note, dated March 30, 1979, for $89,000,

payable to plaintiff. The note provided for monthly payments of principal and interest. Plaintiff then paid off the renewal note held by Empire. Nothing was paid to Stamatis or Sullivan. Defendants failed to make any payments on the note. Cassity made a few payments on the note, but none after the November 1979 payment. Plaintiff brought this action seeking the balance of the note. Further evidence will be set forth in discussing third-party defendant's points relied on.

Third-party plaintiffs Stamatis and Sullivan submitted their claim against third-party defendant Empire Bank on theories of duress and misrepresentation. Separate verdict directing instructions were used on each theory.

Third-party defendant's first point on appeal states that the verdict directing instruction claiming relief on duress, submitted by Stamatis, and an instruction defining duress were not supported by the evidence "in that the evidence showed overwhelmingly that Dr. Stamatis signed the Manufacturers note, of his own free will, because Drs. Stubblefield and Sullivan also signed it, because Dr. Stamatis thought that he had to sign it to avoid a FIRA violation, because Dr. Stamatis expected Cassity to pay the note, and because Dr. Stamatis hoped for a merger of Manufacturers and Empire that would increase the value of his 11,000 Empire shares." The instructions complained of are set forth below.[2]

1. THIS AGREEMENT made between Doug Cassity, Dan Sullivan, and John Stamatis.

1. It is understood that Cassity has purchased Wayne Stubblefield's interest in West Towne Chalet Partnership which owns Brentwood Cattle and Wayne Stubblefield's interest in the Brentwood Pharmacy.

2. It is understood that Cassity makes no claim of ownership to the cattle which shall be owned 70 percent by Stamatis and 30 percent by Sullivan.

3. Cassity hereby assumes and agrees to pay 100 percent of the $97,000.00 loan at Empire Bank and also to hold Sullivan and Stamatis harmless from any liability on the $80,000.00 which is guaranteed to Empire Bank on the mobile home note. Cassity personally guaran-

tees that he will pay said notes even if they are signed by Sullivan and Stamatis and Cassity.

4. It is understood that all payments shall be made from Cassity's personal funds rather than from sale of the cattle which Stamatis and Sullivan shall own personally.

5. The cattle referred to are all the Brangus cattle owned by Brentwood Cattle at the Regal ranch and one-third of the herd of approximately 160 cattle plus offspring located on Bill Cassity's farm in Dallas County.

2. Instruction No. 12

Your verdict must be for third-party plaintiff John Stamatis, M.D. on his claim against third-party defendant Empire Bank if you believe:

First, Dr. Stamatis signed an $89,000.00 promissory note payable to plaintiff Manufacturers

Third-party defendant's second point claims the trial court erred in giving a verdict directing instruction on behalf of Sullivan based on duress and the instruction defining duress set out in footnote one. The verdict directing instruction questioned in this point is identical to the one questioned in point one except Sullivan's name was substituted for Stamatis. Third-party defendant contends that these instructions "were not supported by the evidence, in that the evidence showed overwhelmingly that Dr. Sullivan signed the Manufacturers note, of his own free will, after talking with his attorney, because Drs. Stubblefield and Stamatis also signed it, because Dr. Sullivan thought he had to sign it to avoid a FIRA violation, and because Dr. Sullivan hoped for a merger of Manufacturers and Empire that would increase the value of his Empire shares."

■ In determining if the instructions were supported by the evidence, an appellate court must view the evidence in the light most favorable to the party offering the instructions, giving that party the benefit of all favorable inferences reasonably drawn therefrom and disregarding evidence to the contrary. *Executive Jet Management & Pilot Service v. Scott,* 629 S.W.2d 598, 607 (Mo.App.1981).

■ A cause of action in tort can be based upon duress. See *Steinger v. Smith,* 358 Mo. 39, 213 S.W.2d 396, 400 (1948); *Furman v. Gulf Ins. Co.,* 152 F.2d 891, 894 (8th Cir.1946); *Housing Authority v. Hubbell,* 325 S.W.2d 880, 902 (Tex.Civ. App.1959); Comment, Economic Duress After the Demise of Free Will Theory: A Proposed Tort Analysis, 53 Iowa L.Rev. 892 (1968); Annot., Economic Duress or Business Compulsion in Execution of Promissory Note, 79 A.L.R.3d 598, 611 (1977).

■ Duress occurs if threats caused the party claiming it to be deprived of the free exercise of his will power. *Aurora Bank v. Hamlin,* 609 S.W.2d 486, 488 (Mo. App.1980). Duress is to be tested by the state of mind created in the victim. Id. A claim of duress cannot generally be sustained where there is knowledge of the facts and opportunity for investigation, deliberation, and reflection. Id.

Stamatis testified that he was unaware of the initial loan by Empire Bank to Brentwood Cattle Co. and of a note reflecting the loan bearing what purported to be his signature. He admitted that his signature was on the renewal note, but did not recall signing it. Both doctors testified that they did not sign the note evidencing the Brentwood Cattle Company loan and did not feel obligated on the renewal note. Stamatis testified that Jeffries showed him the renewal note, told him that the bank examiners were critical of the note, and said that as an insider Stamatis was subject to statutory civil and criminal liabilities and penalties, and a possible suit on the note. Jeffries wrote Sullivan and Stamatis and told them that it was necessary to move the loan in order to protect them and Empire Bank "from possible civil penalty which in many cases may be up to $1,000.00 per day". There was evidence that Stamatis and Sullivan could not have been subject to these penalties because of the loan.

Stamatis said he did not want to sign the note to plaintiff. He said that Jeffries elaborated on the penalties and persisted in trying to get him to sign and after some time, and because of the continued pressure from Jeffries, he signed the note. Stamatis testified that he signed it because he was worried about the consequences if he did not sign it, and that criminal charges might cause him disgrace and cause him to

American bank, in order to move an alleged promissory note from Empire Bank, and

Second, third-party plaintiff signed said $89,-000.00 promissory note payable to plaintiff as a result of duress, and

Third, as a direct result of such duress Dr. Stamatis was damaged.

Instruction No. 6

The term 'duress' as used in these instructions means that a person signed the $89,000.00 note payable to plaintiff after having been subjected to pressures exerted by Empire Bank which overcame his will compelling him to sign the note when he would not have done so otherwise.

lose his medical license or affect his practice. He testified that he would not have signed the note except for the pressure applied and the statements by Jeffries that Stamatis was subject to civil and criminal penalties.

There was evidence that there were discussions between persons affiliated with plaintiff Manufacturers American Bank and with third-party defendant Empire Bank regarding the merger of the banks and that Jeffries told the physicians that if the note was not moved the merger talks might be affected. The doctors were told that if the merger occurred the value of their stock would increase and if there was no merger the value would likely decrease.

Sullivan testified that his signature was forged on the note for the original Brentwood Cattle Company loan. Sullivan said that Jeffries pressured him into signing the note with threats of federal law violations, loss of his medical license, and a complete loss of value of Empire Bank stock. Sullivan testified that Jeffries told him there were new bank regulations under a federal law called "FIRA" that required that the Brentwood Cattle Company note be moved to another bank because the makers were "insiders". Sullivan said Jeffries told him that if it was not changed to another bank there were "stiff" penalties that could be put upon Sullivan.

There was evidence that the bank examiners were concerned about several insider and other loans of Empire Bank but not the Brentwood Cattle Company loan. Without being solicited to do so, Jeffries approached one of the examiners and stated that the Brentwood Cattle Company loan would be moved out of the bank within two weeks. Both the Federal Deposit Insurance Corporation bank examiner and the state bank examiner testified that they did not require that the Brentwood Cattle Company renewal note be moved to another bank.

Sullivan met with his attorney before signing the note, but said he had already determined to sign the note and talked to the attorney about other matters and did not ask for advice on the note. He testi-

fied that he would not have signed the note except for the pressure and misrepresentations by Jeffries. Both Stamatis and Sullivan stated that they were unaware that the penalties did not apply to them but only to the bank until after they had signed the $89,000 note.

■ Misrepresentation of law by a representative of a bank can lead to a claim of duress. See *Aurora Bank v. Hamlin*, supra, 609 S.W.2d at 489. That the doctors had time to contemplate whether to sign the note does not necessarily negate the claim of duress as fear of threats may continue for some time. How the passage of time affects the impact of the threats is a factor for consideration of the trier of fact. Id.

Considering the evidence most favorable to the third-party plaintiffs, the evidence was sufficient to submit Stamatis' and Sullivan's claim of duress. The evidence showed a fear of criminal penalties and other consequences, which may not have actually existed, but the threats of which may have been sufficient to overcome the free will of Stamatis and Sullivan. Stamatis and Sullivan could assume that Jeffries, as president of Empire Bank, was correctly advising them regarding federal banking legislation. Whether the physicians were as naive and gullible in this and in other respects as they indicate is questionable, but we view that as a jury question and not a determination for this court.

■ Although other factors might have influenced the decision of Stamatis and Sullivan, there was evidence from which the jury could have found that the threats of criminal and civil penalties robbed them of their free will and resulted in their signing the note. The evidence was sufficient to support giving the instructions. Points one and two are denied.

Third-party defendant's third point also claims instructional error. It states:

The court erred in giving Instruction Nos. 12 and 16, which directed a verdict for Drs. Stamatis and Sullivan, respectively, against Empire if Drs. Stamatis

because said instructions were vague, indefinite, and uncertain, and gave the jury
a roving commission, in that they did not
hypothesize who committed the acts of
duress, or where, or when or what the
acts of duress consisted of.

■ Instruction 12 is set forth in footnote 2. Instruction 16 is the same except
the name Sullivan is used instead of Stamatis. As third-party plaintiffs assert, the
portion of the point that the instruction did
not state "what the acts of duress consisted of" was not preserved for our review.
This contention was not stated at trial, and
was not contained in the motion for new
trial. As it was not, that contention was
not preserved for appellate review. Rule
70.03, Rule 78.07.

■ There is no merit to the remaining
contentions under this point. Instruction
No. 6, also set out in footnote number 2,
defines "duress" applicable to this case and
refers to "pressures exerted by Empire

Bank". It is apparent from the record that
the jury must have understood that these
pressures, if they existed, came from Jim
Jeffries, Empire's then president. Where
they occurred, if relevant, and when they
occurred, are detailed evidentiary facts not
necessary, at least under these circumstances, to be included in the instruction.
See Rule 70.02(e). The acts of duress, if
they occurred, happened over at least two
months. Where or when they occurred
was not a necessary finding by the jury.
This point is denied.

Third-party defendant's points four and
five state that there was no evidence to
support the giving of the instructions submitting fraudulent misrepresentation.
Third-party defendant's points four and
five are set out below.[3] The two instructions are the same except for the names of
the third-party plaintiffs. The instruction
as to third-party plaintiff Stamatis is set
out below.[4]

There was evidence that Jeffries told
both Stamatis and Sullivan that the bank
examiners required that the Brentwood

**3.** IV.

The court erred in giving Instruction No. 13,
which directed a verdict for Dr. Stamatis
against Empire if Dr. Stamatis signed the Manufacturers note to move the Brentwood Cattle
loan from Empire to Manufacturers in reliance
on a false representation of Empire that bank
examiners were requiring the loan to be moved,
because Instruction No. 13 was not supported
by the evidence, in that there was no evidence
of any such representation, and in that the evidence showed overwhelmingly that, in deciding
to sign the note, Dr. Stamatis was influenced
not only by Jeffries' statements that the loan
had to be moved, but also by the fact that Drs.
Stubblefield and Sullivan were also signing the
note, by the expectation that Cassity would
abide by his written agreement to pay the note,
and by his desire not to harm the prospects of a
merger between Manufacturers and Empire that
would increase the value of his 11,000 Empire
shares.

 V.

The court erred in giving Instruction No. 17,
which directed a verdict for Dr. Sullivan against
Empire if Dr. Sullivan signed the Manufacturers
note to move the Brentwood Cattle loan from
Empire to Manufacturers in reliance on a false
representation of Empire that bank examiners
were requiring the loan to be moved, because
Instruction No. 17 was not supported by the
evidence, in that there was no evidence of any

such representation and in that the evidence
showed overwhelmingly that, in deciding to sign
the note, Dr. Sullivan was influenced not only
by Jeffries' statements that the loan had to be
moved, but also by the fact that Drs. Stubblefield and Stamatis were also signing the note,
and by his desire not to harm the prospects of a
merger between Manufacturers and Empire that
would increase the value of his Empire shares.

**4.** Instruction No. 13

Your verdict must be for third-party plaintiff
John Stamatis, M.D., on his claim against third-
party defendant Empire Bank if you believe:

First, Empire Bank told Dr. Stamatis that the
bank examiners required that the Brentwood
Cattle note be moved from Empire Bank intending that he rely upon such representation in
deciding to sign an $89,000.00 promissory note
payable to Manufacturers American Bank, and

Second, the representation was false, and

Third, Empire Bank knew that it was false,
and

Fourth, the representation was material to the
decision of Dr. Stamatis to sign the note to
Manufacturers Bank, and

Fifth, Dr. Stamatis relied on the representation in deciding to sign the note to Manufacturers, and

Sixth, as a direct result of such representation
Dr. Stamatis was damaged.

Cattle note be moved. The bank examiners testified that there was no such requirement. This establishes the misrepresentation. Both Stamatis and Sullivan testified that they would not have signed the note except for that representation by Jeffries.

 It is not necessary that the representation be the sole inducement to act; it is sufficient if the representation is a material factor in the decision to act. *Cantrell v. Superior Loan Corp.*, 603 S.W.2d 627, 636 (Mo.App.1980). The jury could have found that the misrepresentation occurred and that it was material to the decisions of both physicians to sign the note. The instructions were supported by the evidence. Points four and five are denied.

For its point six, third-party defendant states that the trial court erred in submitting verdict directing instructions on both duress and false representation "because the submissions of duress and fraud were contradictory, inconsistent, and mutually repugnant, in that duress submitted an unwilling act, whereas fraud submitted a willing act."

 Instructions for alternative theories of recovery may be submitted to the jury if there is evidence to support each theory and the alternative theories are not inconsistent. See *Lewis v. Envirotech Corp.*, 674 S.W.2d 105, 112 (Mo.App.1984). If proof of one action necessarily disproves the other, they are inconsistent. See *Wallace v. Bounds*, 369 S.W.2d 138, 141 (Mo. 1963).

In contending that the instructions were "contradictory, inconsistent, and mutually repugnant", third-party defendant relies upon the statement in *Steinger v. Smith*, supra, 213 S.W.2d at 400, that:

> While duress has been said to be a species of fraud, yet there is a clear distinction between them. In fraud the party defrauded acts willingly because of the false representation made to him by the defrauding party, the falsity of the representation not being known to the party defrauded; in duress the victim acts knowingly but unwillingly because of the coercion exercised upon him."

 This statement does not mean that both cannot be submitted to the trier of fact. That was not an issue in *Steinger*. Duress and fraudulent misrepresentation are not theories that are always inconsistent so that proof of one necessarily disproves the other. Where threats are made based upon misrepresented facts, it is not inconsistent for both duress and fraud to be present. In such a situation the same facts might support both a claim for duress and for fraud. See *Aurora Bank v. Hamlin*, supra, 609 S.W.2d at 489. As here the proof of one theory did not necessarily disprove the other, this is a case where both duress and misrepresentation may be submitted. The sixth point is denied.

For its seventh point, third-party defendant complains that the damage instructions submitted by third-party plaintiffs allowed the jury to award the physicians their attorney's fees. The point states:

> The court erred in giving Instruction Nos. 14 and 18, the damages instructions of Drs. Stamatis and Sullivan, respectively, because, as applied by Judge Darnold, said instructions permitted Drs. Stamatis and Sullivan to recover, as out-of-pocket expenses, attorney Knauer's fee, as of the time of trial, of $55,000.00, because said instructions, as so applied, violated Missouri law, in that (in the absence of special circumstances not present in this case) attorney's fees are not, under Missouri law, recoverable in a civil case.

The instructions were modified MAI 4.01 and are identical except for the names of the physicians and reference to the verdict directing instructions. The instruction on Stamatis' claim is set out below.[5] Third-party defendant is probably correct that

---

**5.** Instruction No. 14

If you find in favor of third-party plaintiff John Stamatis, M.D., then you must award Dr. Stamatis such sum as you believe will fairly and justly compensate him for any damages you believe he sustained as a direct result of the conduct of third-party defendant Empire Bank as submitted in Instruction No. *12* or *13* for which you find Empire Bank liable.

the jury awarded Stamatis and Sullivan their attorney's fees and expenses. There was evidence that their attorney's fees and expenses in connection with this case were $55,000. The amount awarded to each physician equals the sum of one-half of the amount the jury found the doctors owed plaintiff and one-half of $55,000. Stamatis and Sullivan were found to owe plaintiffs $76,345.79. One-half of that amount is $38,172.90. When this is added to $27,500, one-half of the $55,000, it equals $65,672.90, the amount of the award in favor of each physician.

In the argument portion of its brief, third-party defendant states:

Judge Darnold permitted Dr. Stamatis and Dr. Sullivan to tell the jury that, at the time of trial, they had paid Attorney Knauer $55,000.00 as attorney's fees. Instruction Nos. 14 and 18 [Damage Instructions] are erroneous because, as applied to this case under Judge Darnold's evidentiary ruling, they permitted the awarding of attorney's fees....

When Stamatis testified regarding the attorney's fees and expenses, third-party defendant did not object. The only objection to this testimony was made by plaintiff. The trial judge sustained the objection as related to plaintiff. There was no objection when third-party plaintiffs' counsel referred to his clients' costs and attorney's fees in closing argument.

■ There is no contention that the wording of the instruction was improper or erroneous, but only that it was incorrect because of evidence of the attorney's fees. Whether it was proper for the attorney's fees and expenses to be considered or awarded by the jury is not before us. In the third-party petition, third-party plaintiffs requested attorney's fees against third-party defendant. As far as we can tell from the record, Judge Darnold was not asked to make any ruling on this question during trial and we are not cited to any place in the record where he was asked to do so. The evidence of the attorney's fees came in and was argued by third-party plaintiffs' counsel without objection by

third-party defendant. The instruction could not have been erroneous because of evidence. If the evidence was to be challenged, proper objection should have been made to it. This point has no merit.

For its eighth point, third-party defendant states that the trial court erred in permitting third-party plaintiffs' attorneys to read to the jury portions of the transcript of a hearing before United States District Judge Scott O. Wright where Jeffries entered a guilty plea to making a false report to the Federal Deposit Insurance Corporation on January 29, 1979. This was read as a part of third-party plaintiffs' case against Empire Bank. Later, Empire Bank called Jeffries as a witness.

Even if we agree that the purpose of reading the transcript was improper, and that at the time it was admitted it should not have been, Jeffries later testifying prevents the transcript from having any prejudicial effect. Third-party defendant had indicated before the transcript was read that it would call Jeffries as a witness and there is no claim by it that the reading of the transcript caused Jeffries to be called.

■ When Jeffries testified, it became proper for third-party plaintiffs to show the prior conviction as it may have affected Jeffries' credibility. See § 491.050, RSMo Supp.1984. Jeffries was asked about the conviction, and bringing it out at that time was proper. Because of this, third-party defendant was not prejudiced by having it earlier presented to the jury. See *Husar Industries v. A.L. Huber & Son, Inc.*, 674 S.W.2d 565, 575 (Mo.App.1984). See also *State v. Zagorski*, 632 S.W.2d 475, 478 n. 2 (Mo. banc 1982). Point eight is denied.

Third-party defendant's ninth point states that the trial court erred in overruling its motion for directed verdict because "third-party plaintiffs, failed to make a submissible case against Empire, in that the evidence showed conclusively that Brentwood Cattle Company, a partnership composed of Drs. Stubblefield, Stamatis, and Sullivan, received the proceeds of the original loan and, Drs. Stubblefield, Stama-

tis, and Sullivan received the benefit of the Manufacturers loan by application of the proceeds thereof to payment of their note of December, 1977."

Third-party defendant contends that the physicians were not wronged by Empire Bank as the funds from Manufacturers American Bank were applied to pay an obligation of the physicians' partnership known as Brentwood Cattle Company. Empire claims that the wrong to the physicians was done by Cassity, "not as Registrar as the Voting Trust or as Empire's general counsel, but as 'Partner Cassity'".

This argument is premised on the assumption that the physicians had no defenses against the renewal note held by Empire Bank. The physicians testified that they did not sign the original note and did not recall signing the renewal note. Stamatis testified that he had signed documents in blank at Cassity's or Jeffries' request. Sullivan said he had also signed blank documents in connection with his financial dealings with Cassity and Empire Bank.

In view of Cassity's close involvement with Empire Bank, and that he and another shareholder of the bank received a portion of the original loan, the physicians may have had one or more defenses to the renewal note which could not have been asserted against Manufacturers American Bank. It could be inferred from the evidence that Jeffries wanted the loan moved to another bank as he was concerned that the physicians had a defense to the renewal note because of Empire Bank's relationship and its officials' and employees' relationship to Cassity and their knowledge about his use of the funds loaned by Empire Bank to "Brentwood Cattle Company". This point is denied.

The judgment is affirmed.

HOGAN, P.J., MAUS and CROW, JJ., NORWIN D. HOUSER, Senior Judge, and ROBERT L. CAMPBELL and ANNA C. FORDER, Special Judges, concur.